UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JILLIAN DOHERTY | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | **PLAINTIFF CLAIMS** |
| v. | * | **TRIAL BY JURY** |
| | * | |
| EMERSON COLLEGE, | * | |
| LEE PELTON, INDIVUALLY AND | * | |
| AND AS PRESIDENT OF EMERSON | * | |
| COLLEGE, RONALD LUDMAN, | * | |
| INDIVIDUALLY AND AS DEAN OF | * | |
| EMERSON COLLEGE, DAVID HADEN, | * | |
| INDIVIDUALLY AND AS DIRECTOR | * | |
| OF HOUSING AND RESIDENCE LIFE, | * | |
| AND MICHAEL ARNO, INDIVIDUALLY | * | |
| AND AS TITLE IX INVESTIGATOR. | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT

This cause of action arises from Defendants' deliberately indifferent response to a student-on-student sexual assault on Defendants' campus. Defendants' failure to promptly and appropriately investigate and respond to the assault subjected Plaintiff to a hostile environment, effectively denying her access to educational opportunities. This action alleges violations of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S.C. § 1092(f) as well as claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

## PARTIES AND JURISDICTION

1.      The Plaintiff, Jillian Doherty, (hereinafter "Plaintiff Doherty") resides at 9 Derby Road, Watertown, MA 02472

2.      The Defendant Emerson College (hereinafter "Emerson College") is a private institution of higher learning that receives federal funding, and is located in Boston, Massachusetts.

3.      The Defendant Lee Pelton (hereinafter "Pelton") at all times relevant to this lawsuit was the President of Emerson College, with a principal place of business at 120 Boylston Street, Boston, Massachusetts 02116.

4.      The Defendant Ronald Ludman (hereinafter "Ludman") at all times relevant to this lawsuit was the Dean of Emerson College, with a principal place of business at 120 Boylston Street, Boston, Massachusetts 02116.

5.      The Defendant David Haden (hereinafter "Haden") at all times relevant to this lawsuit was the Director of the Office of Housing and Residence Life at Emerson College, with a principal place of business at 120 Boylston Street, Boston, Massachusetts 02116.

6.      The Defendant Michael Arno (hereinafter "Arno") at all times relevant to this lawsuit was the Director of Student Conduct and  the Title IX investigator of Plaintiff Doherty's case at Emerson College, with a principal place of business at 120 Boylston Street, Boston, Massachusetts 02116.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction) and the doctrines of ancillary and pendent jurisdiction

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the

defendant Emerson College is located in this judicial district and a substantial part of the events which give rise to the claims herein occurred in this district.

## APPLICABLE LAW AND POLICY

9.      Title IX of the Educational Amendments of 1972 (hereinafter "Title IX"), 20 U.S.C. § 1681(a) states that

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance…

10.      Title IX is implemented through the Code of Federal Regulations. See C.F.R. Part 106.

11.      34 C.F.R. § 106.8(b) provides"

> …A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

12.      In *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

13.      In *Davis v. Monroe County Board of Education,* 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* cases where the harasser is a student, rather than a teacher.

14.      *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is

3

     a.  deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

     b.  the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational benefits or opportunities provided by the school.

*Davis*, 526 U.S. at 1669-76.

15.     The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (20 U.S.C. § 1092(f)) (hereinafter "Clery Act") is the landmark federal law that requires colleges and universities across the United States to disclose information about crime on and around their campuses.

16.     The Clery Act states that colleges and universities have to publish an Annual Security Report (ASR), have a public crime log, and disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus, and at certain non-campus facilities including Greek housing and remote classrooms.

**FACTS COMMON TO ALL CAUSES OF ACTION**

17.     Plaintiff Doherty was a full-time freshman student at Emerson College as of September 2011.

18.     On or about April 16, 2012, Plaintiff Doherty was sexually assaulted by a fellow Emerson student, Brian Lynch. The sexual assault occurred in Lynch's suite in the Piano Row Residence Hall on Emerson's campus.

19.     Lynch had consumed an excessive amount of alcohol at an on campus party earlier that evening.

20.     Lynch sent a Facebook message to Doherty requesting that she come to his room. Doherty went to Lynch's room where they engaged in consensual sex.

21.     Lynch pressured Doherty for anal sex, but she refused. Lynch then became aggressive, choked her, and anally penetrated her without her consent. Doherty pleaded with him to stop, but Lynch did not and continued to sexually assault Doherty.

22.     Lynch passed out, and Doherty dressed quietly in the dark. The door to Lynch's suite opened while Doherty was getting dressed. Lynch's roommate, Connor Doolin, came in and later stated that Doherty looked "uncomfortable," when he observed her in Lynch's room.

23.     Doherty confided in her roommates, Catherine Komarow and Kimberly MacCormack, about the assault, because she was confused and conflicted about what happened to her, and what she should do.  Doherty then confided in her best friend, Megan Kipperman, who explained to Doherty that she was indeed raped, and that she should report the incident.

24.     Doherty reached out to Lynch on Facebook, and confronted him for sexually assaulting her. Lynch claimed to have no memory of the assault, but did apologize to Doherty.

25.     Out of fear and concern about her privacy and how she would be treated as a rape victim, Doherty did not report the sexual assault until March 2, 2013.

26.     At all relevant times, Emerson officials distributed inadequate and poorly drafted date rape pamphlets that discussed how date rape primarily occurs when students are drinking, once again victimizing and faulting victims of campus rapes.  This made Doherty believe the college would judge her and condemn her for drinking alcohol and engaging in sexual intercourse.

27.     Emerson's freshman orientation, which Doherty attended, also did not teach or inform the incoming class about what sexual consent actually was under these circumstances. Doherty was therefore unaware that intoxication made her unable to legally give consent in these situations. She was also unaware that the coercion, violence, and pain Lynch forced upon her

5

was indeed, rape.

28.     After becoming more informed about the incidence of rapes on college campuses, Doherty decided to come forward, and emailed defendants Pelton, Ludman, and Haden, informing them she had been raped at Emerson by a fellow student. Doherty received various emails from these recipients, and eventually defendant Arno was assigned by Emerson as the Title IX investigator of the case. Title IX required that Emerson have a properly trained and educated staff investigator available to handle and investigate such claims. At all relevant times, Arno was not properly trained, educated, or experienced in Title IX investigations.

29.     Due to Emerson's lack of proper policies and procedures pursuant to Title IX and the lack of education and training of college administrators, Michael Arno's investigation was woefully inadequate. He failed to interview all the witnesses including Doherty's roommate MacCormick. Arno also failed to include significant details in the report, and made vague notes like Doolin witnessed Doherty looking "uncomfortable" in Lynch's suite.

30.     Emerson's responses to sexual assaults were to blame or accuse the victim, and protect the reputation and image of the school by discouraging students from reporting their sexual assaults.

31.     Prior to Doherty coming forward, Emerson College had constructive and/or actual knowledge of other assault complaints made by Emerson students.  In October 2012, approximately five months before Doherty reported her rape, Sarah Tedesco was drugged by a fellow Emerson student, and then forced to go to an off campus party where she was then sexually assaulted by the Emerson student that drugged her and an MIT student. Tedesco informed Emerson what happened, but Emerson similarly failed to meet the requirements of Title IX, as they failed for Doherty. The College was aware of Tedesco's assault but took

inadequate steps to investigate, or inform Tedesco of her Title IX rights. Tedesco only became aware of those rights three months after she was raped. Tedesco was discouraged from reporting her assault by the Resident Director when she asked Tedesco, "if she was just drunk and not raped." When Tedesco finally did go to the Emerson police, an officer told Tedesco she had "better be sure" that she was raped, because rape is a "serious offense." Emerson never opened a proper investigation, and never provided Tedesco with any accommodations.

32.     Prior to Doherty coming forward, Emerson College had constructive and/or actual knowledge of other assault complaints made by Emerson students not only through the actual complaints themselves, like Sarah Tedesco's, but through the Facebook page "Emerson Confessionals." On this public page, students posted anonymously that they either had been assaulted, or they thought they had been assaulted, and didn't know what to do or who to report it to. Emerson should have been aware of this information, that was publicly available, and done more to protect and educate their students about consent, sexual assault, and their Title IX rights.

33.     Emerson failed to take meaningful action to deal with these complaints as well as prevent these types of instances from happening again.

34.     Emerson College also had actual and/or constructive notice of sexual assaults when Tedesco, Doherty, Manderlink (another student of Emerson), and an anonymous student filed a Title IX complaint against the college with the Department of Education Office for Civil Rights as well as a Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act Complaint. Both complaints alleged that Emerson College fostered a hostile environment when the college and its administrators failed to properly investigate and adjudicate their claims of sexual assault done by fellow students.

35.     Emerson College violated Title IX and the Clery Act by persistently

7

underreporting sexual battery, sexual assault, and rape in the Annual Clery Security Report. The number of forcible sexual offences reported on campus between 2007 and 2012 were either two or zero, which were contrary to the incidents reported on the Emerson Confessionals Facebook page.

36.     Emerson College had a duty to keep Emerson's campus reasonably safe for it's students, including Doherty, and to protect their students. They failed to do either of those things.

37.      Emerson College violated Title IX due to Emerson College administrators' inadequate procedure for handling sexual assault cases. Emerson's pattern and practices included lengthy adjudications, victim blaming, insufficient investigations, and failures to deliver meaningful sanctions. Emerson College did not even follow their own protocols, and failed to properly educate and train their administrators.  This, in turn, discouraged students from coming forward when they experienced sexual assault at the hands of their fellow students.

38.     Emerson College also violated Title IX procedures due to their unequal treatment of Doherty and Lynch during the hearing.

39.     Directly after finals on May 17, 2013, a hearing with the Board of Conduct took place via skype, because Doherty and Lynch were out of state.

40.     This adjudication proceeding was more akin to a kangaroo court than a Title IX hearing. The hearing only took approximately one hour, and Doherty did not have a lawyer. The Board accepted the facts alleged in defendant Arno's investigation as true, and they barely asked Doherty or Lynch any questions about what happened that night. Instead, Doherty and Lynch would type questions to each other, send them to the board for approval, and once the questions were approved, the questions were asked to one another.

41.     There were no witnesses present at the hearing.

8

42.     Without any prior notice to Doherty, Lynch was allowed to present new evidence, a letter of character, from a fellow Emerson student, who had no involvement with the hearing, assault, or the investigation.

43.     The letter of character should not have been accepted since Emerson College's policy for conduct hearings required that all evidence must be submitted prior to the start of the hearing.

44.     Doherty was forced to sit at her computer and listen to the letter of character being read essentially singing the praises of her rapist, once again victimizing Doherty. This witness did not testify and Doherty was not able to address the contents of the letter and the veracity of the statements contained in the letter.

45.     Emerson College denied Doherty the ability to provide additional information and evidence without Lynch's prior knowledge, yet Lynch was also allowed to change his testimony during the hearing. His written account of the rape was that he had no memory of saying goodbye to Doherty, but during the hearing, he changed his testimony, when he said he recalled Doherty leaving his room. Doherty emailed Arno after the hearing to inform him that Lynch had altered his story, but Arno did not take appropriate action.

46.     Immediately after listening to the letter of character, Doherty was asked to give her closing statement. She was so traumatized by this whole sham of a hearing and under a lot of emotional stress that she began to shake and fumble over her words.

47.     Instead of providing Doherty with an opportunity to prepare her closing statement in a more comfortable setting, the board demanded that she give her closing statement immediately. Emerson College's policy states that:

> When the Respondent has indicated that her or his presentation is complete, the
> chair will give the Complainant and Respondent, in that order, the opportunity to

make a closing presentation. At the discretion of the Conduct Board, this
presentation can either be made orally immediately following the closing of the
Respondent's presentation or in writing not more than 36 hours after the close of
the Respondent's presentation. Where the closing presentation is to be written,
both parties will deliver their presentations at the same time.

*Emerson College Student Handbook* pg. 71.

48.     Emerson violated their own internal policies regarding the manner in which the

hearing was conducted and their treatment of Doherty.

49.     Emerson College violated Title IX again when they did not provide prompt notice

of the outcome of the hearing. After the hearing, Arno informed Doherty the school would have

a decision with seven days. However it took a month for Doherty to learn that the school found

Lynch "not responsible for the rape."

50.     The reasons given for finding Lynch "not responsible" were:

1.  Both Doherty and Lynch admitted to consuming alcoholic beverages during
    the night of the alleged incident and to being intoxicated at the time of the
    alleged incident.
2.  The Board concluded that both Doherty and Lynch genuinely believed they
    were telling the truth in their statements concerning the incident. However, the
    Board found it more likely than not that both Doherty and Lynch were unable
    to fully and accurately remember what occurred at the time of the alleged
    incident due to their respective alcohol consumption.
3.  Doherty testified during the hearing that Lynch engaged in forcible non-
    consensual sex with her. However, Doherty's testimony in this regard was
    inconsistent with an account of the same event she provided to a witness, her
    roommate, on the day immediately following the alleged incident. Based on
    the above findings, the Board concluded that the evidence was insufficient to
    support a finding that more likely than not the Respondent violated the
    College's Code of Conduct as charged. Accordingly, the Board found the
    Respondent "not responsible" for the charges and no sanctions were issued.

51.     However the Board did not consider the direct contradiction in Lynch's stories

and held Doherty's lack of knowledge and understanding about what constitutes rape against her.

Since Emerson failed to provide proper education and instructions to Doherty as a student

regarding campus rape and what constitutes consent, Emerson's own failure caused Doherty to lack the understanding she needed in order to comprehend the misconduct of Lynch.

52.     After being informed that her hearing resulted in no sanction and a "not guilty" verdict, Doherty was re-victimized and traumatized. She decided to appeal the College's decision. Doherty was appalled at the Board's decision and the fact that Emerson would allow this rapist to remain on campus further endangering her and the student body. Defendant Ludman responded to the appeal and advised Doherty that Arno did not have to conduct another investigation or interview Connor Doolin again.

53.     By July 26, 2013, Doherty's appeal was granted, and a second hearing was conducted by  different administrators.

54.     The second hearing took place in October 2013. This time the hearing was four hours long, Doherty retained an attorney, and there were witnesses.

55.     One of the witnesses called in the second hearing was defendant Arno. He testified that prior to his involvement in this matter, he did not have adequate training regarding Title IX investigations involving sexual assaults on campus. Arno testified that when he conducted the original investigation he "did not have enough training." He also admitted that after Doherty's hearing he was provided with additional training and he could now see the "scales being tipped in Jillian's favor."

56.     This testimony is a binding admission against Emerson and Arno. Arno and Emerson knew he was not a properly trained investigator, which is a requirement according to Title IX, and this constituted a violation of Title IX.

57.     At the end of the second hearing, Lynch was found responsible, and was expelled from the college.

58.     By this time, Doherty had already suffered severe emotional distress, and she was battling chronic depression and post traumatic stress due to the assault and the defendants collective violations of Title IX.

59.     When Doherty was sexually assaulted by Lynch, she was in her freshman year of college. She had a solid academic performance her first semester at Emerson prior to the rape. However, after the rape, her grades started to decline. After reporting the rape, her grades once again began to decline due to Emerson's mistreatment of the case. After the second hearing, Doherty requested a reasonable accommodation in order to address her serious emotional distress caused by Emerson. Doherty wanted to be able to complete her Emerson education, now that the rapist had been expelled, but was hoping professors could allow her to work from home, and help her during office hours. Instead of accommodating her request, Diane Paxton, Director of Disability, told Doherty the college could not accommodate her request.

60.     Shortly after the second hearing, Doherty began an outpatient treatment program at Arbor Hospital to address the post traumatic stress and emotional distress caused by the defendants.

61.     Doherty was eventually forced to withdraw from Emerson's hostile and threatening environment, and she stopped attending Emerson College as of the Spring 2014 Semester.

62.     Doherty was caused to suffer economic losses as well as physical and emotional pain and distress caused by the illegal and unlawful conduct of the defendants.

## COUNT I

## VIOLATION OF TITLE IX AGAINST DEFENDANT EMERSON  COLLEGE

63.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 of this Complaint as more fully stated herein.

64.     Emerson College's acts and failure to act with respect to Jillian Doherty's allegations of sexual assault occurring on the school's campus by a male Emerson College student deprived Jillian Doherty of her rights on the basis of her female gender.

65.     The assault suffered by Jillian Doherty is, by nature, discriminatory on the basis of her female gender.

66.     Emerson College and its officials had actual and/or constructive notice of the assault on Jillian Doherty. These officials had the duty and authority to address this type of conduct.

67.     Emerson College and its officials had actual and/or constructive notice of other past sexual assaults that occurred before Doherty reported her rape. Emerson College failed to properly respond to those complaints, and failed to adequately implement policies designed to educate their students and administrators and protect their students.

68.     Emerson College and its officials and officers responded to Jillian Doherty's complaint by failing to act and/or acting with deliberate indifference or in a manner clearly unreasonable in light of the known circumstances.

69.     Emerson College failed to investigate Jillian Doherty's reported sexual assault in any meaningful way.

70.     Emerson College failed to act promptly and equitably in response to Jillian Doherty's reported sexual assault.

71.     Emerson College took no steps to provide useful academic support or to otherwise accommodate Jillian Doherty after she reported the assault.

72.     Emerson College's failure to act in an effective manner resulted in Jillian Doherty leaving school thereby exacerbating her impaired mental state arising from the assault and effectively denying her access to the educational benefits and opportunity from either Emerson College or from any other college or university.

73.     Emerson College's response to Jillian Doherty's complaint of sexual assault was not reasonably calculated to, and thereby failed to, end the discriminatory conduct faced by Jillian Doherty.

74.     Emerson College's responses to Jillian Doherty's complaint were not reasonably calculated to prevent this type of discrimination from recurring on campus.

75.     Emerson College failed to restore Jillian Doherty to pre-deprivation status.

76.     The sexual assault committed upon Jillian Doherty occurred in a Residence Hall that was operated by Emerson College, and under the supervision and monitoring of its security personnel.

77.     The assault on Jillian Doherty involved conduct so severe and objectively offensive that it deprived Jillian Doherty of her educational access and benefits.

78.     At all relevant times, Emerson College receives federal funds.

79.     Emerson College's policies and procedures for reporting sexual harassment and sexual assault, as described in the annual Student handbook and Code of Conduct are inadequate.

80.     In addition, Emerson College failed to follow its own published guidelines by not conducting the hearing process in the manner proscribed in the Student Handbook.  Despite the inadequacy of these guidelines, Emerson had a duty to follow what they themselves had put in

place.

81.     Emerson College's procedures failed to meet the requirements of Title IX. These failures include, but not limited to:

- Failure to properly educate and train their administrators.

- Failure to properly educate their students about the dangers of sexual assault and consent.

- Failure to provide adequate timelines for the prompt investigation and resolution of complaints.

- Failure to ensure that findings will be reached regarding complaints filed.

- Failure to define which sanctions are available through various Emerson College procedures, how they overlap, and under what circumstances they may be implemented.

82.     Emerson College relied solely on the inadequate investigation of Michael Arno and his conclusions instead of attempting to verify Jillian Doherty's complaint and any defenses, such as consent.

83.     In addition, Emerson College's procedures placed the burden on the complainant to initiate all relevant procedures to resolve fully a complaint of sexual abuse. The requirement of Title IX that procedures be equitable is to ensure that the reporting process is not dependent upon a complainant's inner fortitude and tenacity.

84.     Emerson College's procedures are on their face, and in their application, inequitable because there are not enforced uniformly and are not easy to follow, thus functioning as a barrier to complaints.

85.     Jillian Doherty was systematically denied the means to achieve a prompt and

equitable resolution of her complaint, including her right to a thorough and objective investigation.

86.     Emerson College has fostered and perpetuated a hostile education environment on the basis of sex on its campus in violation of Title IX and its implementing regulations. Emerson and their administrators failed to take seriously sexual assault complaints, and did not provide their students with the proper resources they needed to handle these assaults. Instead, they left their female students, who had been assaulted, isolated and afraid to come forward for fear of being re-victimized and humiliated.

## COUNT II
## VIOLATION OF THE JEANNE CLERY DISCLOSURE OF CAMPUS SECURITY POLICY AND CAMPUS CRIME STATISTICS ACT AGAINST DEFENDANT EMERSON COLLEGE

87.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 86 of this Complaint as more fully set forth below.

88.     Emerson College violated the Clery Act by improperly reporting the incidents of sexual assaults in and around its campus, inadequately responding to public episodes of sexual misconduct on campus that demonstrate a worsening climate of sexual violence at Emerson, and allowing this environment of sexual abuse of women to proliferate.

89.     Emerson College had actual and/or constructive knowledge of other sexual assaults like Sarah Tedesco's, but did not take any meaningful action to help the victims.

## COUNT III
## NEGLIGENCE AGAINST DEFENDANTS EMERSON COLLEGE, LEE PELTON, RONALD LUDMAN, DAVID HADEN, AND MICHAEL ARNO

90.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 89 of this Complaint as more fully set forth below.

91.     Emerson College, through its school publications, acknowledged and accepted its duty to protect its students, including Jillian Doherty, and to provide a safe environment for them.

92.     Defendants Pelton, Ludman, Haden, and Arno, as administrators, had a duty to implement and enforce the school's published guidelines, codes, regulations, and policies designed to protect Emerson College's students.

93.     Emerson College's own publications acknowledge that sexual assaults at colleges are foreseeable circumstances.

94.     Emerson College's own publications acknowledge that a student may be unable to consent to sexual conduct due to coercion or voluntary or involuntary alcohol or drug use.

95.     Emerson College and defendants Pelton, Ludman, Haden, and Arno failed to take reasonable precautions to safeguard its students, and failed to follow the school's guidelines with respect to responding to reported sexual assaults occurring on campus.

96.     Emerson College's lax enforcement of its alcohol policy created an environment in which alcohol-induced misconduct was manifestly foreseeable, and accepted it, ignored it, and allowed this type of misconduct to proliferate.

97.     Sexual assault is a widely acknowledged risk of unchecked alcohol consumption occurring on a college campus where young adults are left improperly supervised by college officials.

98.     Emerson College and defendants Pelton, Ludman, Haden, and Arno breached their duty to Emerson College's students, including Jillian Doherty.

99.     The breaches committed by defendants Emerson College, Pelton, Ludman, Haden, and Arno proximately caused severe physical and psychological injuries to Jillian

17

Doherty.

100.     The illegal, wrongful and negligent acts committed by defendants Emerson College, Pelton, Ludman, Haden, and Arno resulted in Jillian Doherty's departure from Emerson College and her persistent pain and suffering that arose from the fear, guilt, anxiety, and embarrassment she suffered in the absence of the school's support, and in the face of the school's manifest disregard of the duties it owed to her.

101.     Jillian Doherty endured months of pain and suffering following the attack, which was caused by Emerson College's blatant indifference towards her, and towards its obligations both prior to and after the attack occurred and the complaint was filed.

102.     By reason of the above, Jillian Doherty was subjected to conscious pain and suffering, loss of the educational  opportunities, and loss of earning capacity caused by Emerson College from the day she reported the assault to the school in March 2013 to the present.

## COUNT IV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS EMERSON COLLEGE, PELTON, LUDMAN, HADEN, AND ARNO

103.      Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 103 of this Complaint as if more fully set forth below.

104.     The elements of a claim of negligent infliction of emotional distress are:

1. The defendant engaged in negligent conduct or a willful violation of a statutory standard;
2. The plaintiff suffered serious emotional distress;
3. The defendant's negligent conduct or willful violation of statutory standards was a cause of the serious emotional distress.

105.      Emerson College engaged in negligent conduct, when the defendants collectively breached their duty to not only implement adequate policies designed to protect Emerson College's students, but also to enforce those published guidelines, codes, regulations,

and policies.

106.     Emerson College also engaged in negligent conduct when they breached their duty to protect their students from sexual assault. The College's own publications acknowledge that sexual assaults at colleges are foreseeable circumstances, and that a student may be unable to consent to sexual conduct due to coercion or voluntary or involuntary alcohol or drug use. However, the College and its' administrators failed to take the necessary precautions to safeguard and protect their students.

107.     Emerson College and defendants Pelton, Ludman, Haden, and Arno willfully violated the statutory standards laid out in Title IX, and negligently mishandled Doherty's sexual assault claim by not conducting a proper investigation done by an experienced Title IX investigator, victimizing Doherty, failing to adhere to the School's own conduct board procedures, and failing to properly sanction the rapist.

108.     Doherty suffered emotional stress, and the post traumatic emotional stress was so serious that a reasonable person would not have been able to cope with the mental distress caused by the circumstances.

109.     The defendants' collective negligence and willful violations of Title IX caused Doherty to suffer this emotional distress.

110.     The illegal, wrongful and negligent acts committed by defendants Emerson College, Pelton, Ludman, Haden, and Arno resulted in Jillian Doherty's departure from Emerson College and her persistent pain and suffering that arose from the fear, guilt, anxiety, and embarrassment she suffered in the absence of the school's support, and in the face of the school's manifest disregard of the duties it owed to her.

111.     Jillian Doherty endured months of pain and suffering following the attack, which

19

was caused by Emerson College's blatant indifference towards her, and towards its obligations

both prior to and after the attack occurred and the complaint was filed.

112.    By reason of the above, Jillian Doherty was subjected to conscious pain and

suffering caused by Emerson College from the day she reported the assault to the school in

March 2013 to the present.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS EMERSON COLLEGE, PELTON, LUDMAN, HADEN, AND ARNO.

113.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through

113 of this Complaint as if more fully set forth below.

114.    The elements of a prima facie case for the tort of intentional infliction of
emotional distress are:

1. outrageous conduct by the defendant;
2. the defendant's intention of causing or reckless disregard of the probability of
causing emotional distress;
3. the plaintiff's suffering severe or extreme emotional distress; and
4. actual and proximate causation of the emotional distress by the defendant's
outrageous conduct.

115.    Emerson College's response to Jillian Doherty's complaint was outrageous,

insensitive, and humiliating. They not only allowed an inexperienced investigator, defendant

Arno, to handle the process, but when the hearing did happen, Emerson's board of conduct

solely relied on defendant Arno's poor investigation.

116.    The entire hearing process was contrary to Emerson College's own published

guidelines in their Code of Conduct, and it left Jillian Doherty in a state of extreme emotional

distress.

117.    The extreme and outrageous conduct of defendants Emerson College, Pelton,

Ludman, Haden, and Arno was sufficiently insensitive as to intentionally cause Jillian Doherty

20

severe emotional distress.

118.     Given the severity of the assault, circumstances are such that emotional distress was substantially certain to occur from the failure of defendants Emerson College, Pelton, Ludman, Haden, and Arno to respond to Jillian's complaint in any meaningful way.

119.     As a result, Jillian Doherty suffered severe emotional distress and was damaged to the point that she sought outside medical treatment.

120.     The wrongful and intentional acts committed by defendants Emerson College, and defendants Pelton, Ludman, Haden, and Arno resulted in Jillian Doherty's permanent departure from Emerson College and her subsequent pain and suffering which arose from the fear, guilt, anxiety, and embarrassment she suffered in the absence of the school's support, and in the face of the school's manifest disregard of the duties it owed to her.

121.     Jillian Doherty endured months of pain and suffering following the attack, and that suffering continues today.

122.     By reason of the above, Jillian Doherty was subjected to conscious pain and suffering caused by Emerson College from the day she reported the attack to Emerson College on March 2, 2013 until she left school in the Spring 2014 semester.

123.     Defendants Emerson College, Pelton, Ludman, Haden and Arno acted with actual malice, or so recklessly or wantonly to permit the inference of malice, to establish punitive damages.

**WHEREFORE,** Plaintiff requests that this Court

1.  Award to the Plaintiff compensatory and punitive damages resulting from her pain and suffering resulting from the Defendants' deliberate indifference.

2. Award to the Plaintiff reasonable attorney's fees and costs expended in this

   manner; and

3. Award to the Plaintiff such other relief as it deems just and proper.


The Plaintiff,
By Her Attorney,


_/s/ David P. Angueira____
David Angueira
BBO# 019610
Swartz & Swartz
10 Marshall Street
Boston, MA 02108
617-742-1900
Date: August 8, 2014          617-367-7193