UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JILLIAN DOHERTY,

           Plaintiff,

V.

EMERSON COLLEGE, LEE PELTON,
INDIVIDUALLY AND AS PRESIDENT OF
EMERSON COLLEGE, RONALD
LUDMAN, INDIVIDUALLY AND AS
DEAN OF EMERSON COLLEGE, DAVID
HADEN, INDIVIDUALLY AND AS
DIRECTOR OF HOUSING AND
RESIDENCE LIFE, AND MICHAEL ARNO,
INDIVIDUALLY AND AS TITLE IX
INVESTIGATOR,

           Defendants.

C.A. No. 1:14-cv-13281

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Plaintiff Jillian Doherty ("Ms. Doherty" or "Plaintiff"), a former student at defendant

Emerson College ("Emerson" or the "College"), recounts in her Complaint a serious and tragic

event: her sexual assault by another Emerson student. She acknowledges that after she reported

the assault, Emerson promptly investigated and held a Conduct Board hearing within weeks; sent

her written notice of the Conduct Board's decision and a statement of reasons; afforded her the

opportunity to appeal and granted her appeal; provided Emerson administrators with additional

training; held a second Conduct Board hearing, and ultimately expelled her attacker by the

following semester.

Nevertheless, despite acknowledging Emerson's prompt, equitable, and effective

response, Ms. Doherty believes Emerson should have done more. How much more is not clear

from the face of the Complaint, but what is clear is that the facts alleged in the Complaint, even

when accepted as true for the purpose of Defendants' Motion to Dismiss, do not establish that the Defendants violated any law.

Ms. Doherty asserts five claims against the Defendants:  Count I - violation of Title IX, 20 U.S.C. § 1681; Count II - violation of The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S.C. § 1092(f) (the "Clery Act"); Count III - negligence; Count IV - negligent infliction of emotional distress, and Count V - intentional infliction of emotional distress.[1]  For the purposes of their motion to dismiss only, the Defendants accept as true the well-pleaded facts alleged in the Complaint.  *See Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 47 (1998).  Nonetheless, the Complaint lacks sufficient legal or factual support to maintain any of these claims.  As demonstrated below:

* The Title IX claim fails because the Complaint lacks facts establishing that Emerson acted with "deliberate indifference," an essential element of a Title IX civil claim;

* The Clery Act claim fails because the statute prohibits a private right of action;

* The negligence claims fail because the Complaint does not identify any legal duty that the Defendants owed or breached, any injuries for which recovery is recognized, or otherwise provide facts sufficient to state a claim under Massachusetts law; and lastly

* The intentional infliction of emotional distress claim fails because the Complaint does not describe any extreme or outrageous conduct by the Defendants, an essential element of the tort.

For these reasons, the Complaint must be dismissed pursuant to Rule 12(b)(6).

---

[1] Counts I and II apply solely to the College; Counts III, IV and V apply to all Defendants.

## I.     STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

### A.     The Parties

Ms. Doherty is a resident of Watertown, Massachusetts. *See* Compl., ¶ 1. She enrolled at Emerson College as a freshmen in September 2011, but stopped attending as of the Spring 2014 semester. *Id.* ¶¶ 17 and 61.

Emerson College is a private, post-secondary educational institution located in Boston, Massachusetts. *Id.* ¶ 2. Defendant Lee Pelton ("President Pelton") is the President of Emerson. *Id.* ¶ 3. Defendant Ronald Ludman ("Dean Ludman") is the Dean of Students. *Id.* ¶ 4. Defendant David Haden ("Director Haden") is the Associate Dean and Director of the Office of Housing and Residence Life. *Id.* ¶ 5. Defendant Michael Arno ("Director Arno") is the Director of Student Conduct. *Id.* ¶ 6.

### B.     The Sexual Assault and Emerson's Response

On or about April 16, 2012, Ms. Doherty exchanged electronic messages with another Emerson student (the "Respondent")[2] and agreed to visit this student in his residence hall room. *Id.* ¶¶ 18, 20. The Respondent had been drinking earlier that night. *Id.* ¶ 19. Ms. Doherty and the Respondent engaged in consensual sexual intercourse. *Id.* ¶ 20. The Respondent pressured Ms. Doherty for anal intercourse, but she refused. *Id.* ¶ 21. The Respondent then penetrated Ms. Doherty anally without her consent. *Id.* Ms. Doherty left the Respondent's residence while the Respondent was "passed out." *Id.* ¶ 22. There are no allegations that any of the Defendants were aware of this incident at the time it occurred, or of any prior incidents of sexual assault involving the Respondent. Nor are there any facts suggesting that this incident was reasonably foreseeable to any of the Defendants.

---

[2] In compliance with its obligation to protect the privacy of students and former students, Emerson College refers in this memorandum to non-party students by anonymous identifiers.

Ms. Doherty does not claim that Emerson provided inadequate security or failed to respond to a call for assistance. Rather, she criticizes the College's awareness and training materials. According to Ms. Doherty, "[a]t all relevant times" Emerson officials distributed "inadequate and poorly drafted date rape pamphlets." *Id.* ¶ 26. The pamphlets were inadequate because, she alleges, they stated that date rape "primarily occurs when students are drinking." *Id.* Ms. Doherty inferred from that statement that "the [C]ollege would judge her and condemn her for drinking alcohol and engaging in sexual intercourse." *Id.* Ms. Doherty also alleges that Emerson's freshmen orientation, which she attended, did not inform students about "what sexual consent actually was under these circumstances." *Id.* ¶ 27. Consequently, she claims that she was "unaware that intoxication made her unable to legally give consent in these situations" and that she did not understand that the "coercion, violence, and pain" the Respondent subjected her to was rape. *Id.*

Ms. Doherty eventually decided to seek redress with the College. She first disclosed the incident to Emerson officials the following year, on March 2, 2013. *Id.* ¶¶ 25, 28. Ms. Doherty e-mailed President Pelton, Dean Ludman, and Director Haden, alleging that she had been raped at Emerson by an Emerson student. There are no allegations that her report was ignored or that the Defendants declined to act. Ms. Doherty concedes that the administrators did, in fact, reply to her e-mail and assign Director Arno, a designated Title IX investigator, to investigate. *Id.* ¶ 28.

Ms. Doherty alleges that Emerson's investigation was "woefully inadequate" because Director Arno did not interview one of her roommates; did not include unidentified "details in the report," and wrote "vague" notes. *Id.* ¶ 29. Nonetheless, Director Arno's investigation resulted in Emerson bringing Conduct Code charges against the Respondent. *Id.* ¶ 39.

### C.     The First Conduct Board Hearing

The Conduct Board held its initial hearing on May 17, 2013, immediately after final exams, via Skype because Ms. Doherty and the Respondent were both out of the state.  *Id.* ¶ 39. Ms. Doherty complains about various aspects of the hearing, including that she did not have a lawyer; the hearing panel accepted Director Arno's report of his investigation as true; the Conduct Board "barely asked" Ms. Doherty or Respondent questions; Ms. Doherty and Respondent were permitted only to type questions to each other, which were approved and posed to each of them respectively; Respondent was "allowed" to change his testimony; there were no other witnesses present; and Respondent was allowed to read a letter from an absent character witness, which Ms. Doherty alleges should have been submitted prior to the start of the hearing. *Id.* ¶¶ 40-45.

Ms. Doherty alleges that, in accordance with Emerson's policy, she was not permitted to provide additional information and evidence without Respondent being notified of the information in advance.  *Id.* ¶ 45.  The Conduct Board required her to present her closing statement during the hearing, consistent with Emerson's policy that: "[T]he chair will give the Complainant and Respondent, in that order, the opportunity to make a closing presentation.  At the discretion of the Conduct Board, this presentation can either be made orally immediately following the closing of the Respondent's presentation or in writing not more than 36 hours after the close of the Respondent's presentation." *Id.* ¶¶ 46-47.

After the hearing, Emerson notified Ms. Doherty of the Board's conclusion that the evidence was insufficient to support a finding that it was more likely than not that the Respondent had violated Emerson's Code of Conduct.  *Id.* ¶ 49.  Emerson explained to Ms. Doherty why the Respondent was found "not responsible," pointing out that Ms. Doherty's

testimony during the hearing was inconsistent with an account of the same event that she had provided to another witness, her roommate, the day immediately following the incident. *Id.* ¶ 50.

**D.     Ms. Doherty's Appeal and the Second Conduct Board Hearing**

As permitted by Emerson policy, Ms. Doherty appealed the Board's finding. *Id.* ¶ 52. Dean Ludman responded to Ms. Doherty's appeal and advised her that the appeal process would not include another investigation. *Id.* Emerson granted Ms. Doherty's appeal by July 26, 2013, and convened a new Conduct Board hearing before different administrators. *Id.* ¶ 53. Emerson held the second hearing in October 2013. *Id.* ¶ 54. Ms. Doherty retained an attorney, and witnesses testified; the process took about four hours. *Id.* Director Arno allegedly testified during the second hearing that he "did not have enough training" when he conducted the original investigation but was provided with "additional training" and now believed the "scales [were] tipped in [Ms. Doherty's] favor." *Id.* ¶ 55. The second Conduct Board found the Respondent responsible for sexually assaulting Ms. Doherty, and Emerson expelled him. *Id.* ¶ 57.

**E.     Other Sexual Assaults**

Lastly, Ms. Doherty alleges that Emerson knew about prior sexual assaults against other students but did not take "meaningful action" of an unspecified nature to prevent "these types of instances from happening again." *Id.* ¶¶ 31-34. There are no allegations that these prior incidents involved either Ms. Doherty or the Respondent or are otherwise connected to the assault reported by Ms. Doherty.

## II.     LEGAL ARGUMENT

**A.     Standard for Dismissal Under Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), the Complaint must contain sufficient facts which, if proven, "state a claim to relief that is plausible on its face" with regard to each of the causes of action and against each of the defendants. *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The failure to provide factual support for any material element is fatal. *See Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery") (internal quotation and citation omitted). The Court should disregard Plaintiff's legal conclusions and any vague and conclusory allegations. *See Iqbal*, 556 U.S. at 678; *Morales v. Desmarais*, No. 12-12096-LTS, 2013 WL 3208610, *1 (D. Mass. June 21, 2013) (citing *United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (holding that dismissal of a claim is appropriate when the pleadings fail to set forth facts respecting each material element necessary to sustain recovery) . Plaintiff's complaint, as shown below, fails to set forth sufficient facts respecting the material elements of her claims and must be dismissed.

### B. The Title IX Claim Fails Because Emerson Did Not Respond with Deliberate Indifference to Plaintiff's Report of Sexual Assault.

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). To establish a *prima facie* claim under Title IX in cases of student-on-student sexual assault, a plaintiff bears the burden of alleging facts sufficient to prove three essential elements: (1) she was subjected to harassment severe enough to compromise her educational opportunities; (2) the educational institution had actual knowledge of the harassment; and (3) the institution exhibited deliberate indifference to the harassment. *See Wills v. Brown Univ.*, 184 F.3d 20, 26 (1st Cir. 1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285-290, 118 S. Ct. 1989, 1997-99 (1998)). Plaintiff's Title IX claim founders on the third element - her Complaint lacks the facts necessary to establish that Emerson acted with deliberate indifference.

### 1. The Complaint Establishes as a Matter of Law That Emerson Did Not Act with Deliberate Indifference.

To satisfy the deliberate indifference standard, a plaintiff must allege much more than mere negligence. Title IX requires *intentional* misconduct of an *egregious* nature. A plaintiff must plead facts sufficient to support a legal determination that a school "intentionally acts" in violation of Title IX through "grossly inadequate action or no action at all," resulting in sex discrimination against the student. *Hunter v. Barnstable Sch. Comm.*, 456 F. Supp. 2d 255, 265 (2006) (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642-43 (1999)); *see also Doe v. Town of Bourne*, No. Civ. A. 02-11363-DPW, 2004 WL 1212075, **12-13 (D. Mass. May 28, 2004) (dismissing Title IX claim because plaintiff adduced insufficient evidence that school's response to reported sexual assault was grossly inadequate). Deliberate indifference requires "an official decision . . . not to remedy the violation." *Hunter* 456 F. Supp. 2d at 265 (quoting *Gebser*, 524 U.S. at 290). Liability attaches "only where [a school] had an opportunity to take action to end or limit the sexual harassment and failed to do so." *Id.* (citing *Gebser*, 524 U.S. at 289); *see also Doe v. D'Agostino*, 367 F. Supp. 2d 157, 164-65 (D. Mass. 2005) (holding that plaintiff could not establish Title IX claim because facts alleged showed that school conducted investigation in response to parent complaints).

Plaintiff does not, and cannot, allege in her Complaint that Emerson failed to act or that Emerson made an official decision not to redress the violation she reported. To the contrary, the Complaint concedes that Emerson made an official decision to investigate, adjudicate, and remedy the situation. What Plaintiff disputes in her Complaint is the *adequacy* of Emerson's response. To be actionable, therefore, Plaintiff's Title IX claim must allege facts showing that Emerson's response was not merely negligent but "grossly inadequate," tantamount to an

intentional decision not to remedy her situation and prevent further harassment.  *Hunter* 456 F. Supp. 2d  at 265.

There are no such factual allegations in her Complaint.  Rather, the Complaint, stripped of its conclusory allegations, establishes as a matter of law that Emerson responded in a timely and reasonable manner to Plaintiff's report that she was sexually assaulted.  Plaintiff did not report her sexual assault to Emerson until March 2, 2013.  Compl. ¶¶ 25, 28.  After receiving notice, Emerson officials responded to Plaintiff's report and assigned one of its assistant Title IX coordinators, Director Arno, to investigate.  *Id.* ¶ 28.  Despite her criticism of how the investigation was conducted, Plaintiff acknowledges that within a few weeks of her report Director Arno interviewed witnesses, prepared a report, and referred the matter to Emerson's Conduct Board for a hearing.  *Id.* ¶¶ 22, 29, 39.  Emerson held a hearing promptly thereafter on May 17, 2013, immediately following the students' final exams.  *Id.* ¶ 39.  During the hearing, Emerson gave both parties an opportunity to ask questions of each other.  *Id.* ¶ 40.

Over the summer, Emerson notified Plaintiff of the hearing results, explained the Board's rationale to her, and gave her an opportunity to appeal the decision.  *Id.* ¶¶ 49-50, 52.  Emerson granted Plaintiff's appeal by July 26, 2013.  *Id.* ¶¶ 52-53.  Emerson held a second Conduct Board hearing in October 2013, during which Director Arno testified that he believed the "scales [were] tipped in [Plaintiff's] favor."  *Id.* ¶ 54-55.  Emerson found the Respondent responsible for sexually assaulting Plaintiff and expelled him from the College.  *Id.* ¶ 57.

These facts are fatal to Plaintiff's claim that Emerson's response was "grossly inadequate."  First, while she alleges several deficiencies in the process of addressing her sexual assault, she fails to identify any action amounting to an intentional decision to avoid redressing the misconduct she reported.  In other words, the Complaint fails to describe any conduct by

Emerson that was "clearly unreasonable." *See Hunter*, 456 F. Supp. 2d at 265. That failure alone is sufficient to justify dismissal. *See, e.g., Town of Bourne*, 2004 WL 1212075 at *13 (holding that "whatever the deficiencies" of the administrators' response to a reported sexual assault, the complaint did not show that the school was deliberately indifferent).

Second, the Complaint contains no allegations that Plaintiff was subject to any further sexual harassment by the Respondent after the incident on April 16, 2012.[3] Compl. ¶ 21. As a matter of law, remedial measures cannot prove inadequate under Title IX if no further sexual harassment occurs. *Hunter*, 456 F. Supp. 2d at 265 (granting summary judgment for school district where sexual harassment of student ended before school received actual notice of the harassment).[4]

Third, it is axiomatic that if a school acts in a "timely and reasonable manner" to end harassment once it receives actual notice, there can be no liability under Title IX. *Hunter*, 456 F. Supp. 2d at 265 (citing *Wills*, 184 F.3d at 26); *D'Agostino*, 367 F. Supp. 2d at 164 (same). As alleged in the Complaint, Emerson's response was timely and reasonable. *See Town of Bourne*, 2004 WL 1212075 at *13 (dismissing Title IX claim where facts in complaint established that after learning about sexual assault, school referred student to a counselor, informed school officials, and decided, after evaluation, not to report the assault to the student's parents).

Plaintiff's allegations that Emerson "had constructive and/or actual knowledge of other assault complaints made by Emerson students" and did not "take meaningful action . . . to prevent these types of instances from happening again" also fail to satisfy the deliberate

---

[3] Note that Ms. Doherty has not claimed sexual harassment by any other person.
[4] *Accord Moore v. Murray State Univ.*, No. 5:12-CV-00178, 2013 WL 960320, **4-5 (W.D. Ky. Mar. 12, 2013) (dismissing Title IX claim where complaint alleged no facts that plaintiff was subjected to or experienced further sexual harassment after reporting her sexual assault); *Elgamil v. Syracuse Univ.*, No-99-CV-611 NPMGLS, 2000 WL 1264122, at *8 (N.D.N.Y. Aug. 22, 2000) ("The circuits that have taken the question up have interpreted [*Davis*] to mean that there must be evidence that actionable harassment continued to occur *after* the appropriate school official gain[ed] actual knowledge of the harassment.") (internal citations omitted).

indifference standard as a matter of law.  Compl. ¶ 31-34.  The United States Supreme Court specifically rejected a negligence standard that would hold schools liable under Title IX for failing to prevent sexual misconduct of which school officials "*should* have known."  *Doe v. Pike Sch., Inc.*, No. 13-11730-RGS, 2014 WL 413207, *3 (D. Mass. Feb. 4, 2014) (quoting *Davis* 526 U.S. at 642) (emphasis in original).  Rather, Plaintiff must establish that Emerson officials had "actual knowledge" of sexual misconduct by the Respondent and failed to act.  *Pike Sch., Inc.*, 2014 WL 413207 at *2 (citing *Gebser*, 524 U.S. at 290) (dismissing Title IX claim because complaint failed to establish that school officials had actual knowledge of prior sexual assaults by plaintiff's former teacher); *D'Agostino*, 367 F. Supp. 2d at 166-67 (concluding plaintiff's Title IX claim failed because prior complaints did not give school notice of alleged assailant's propensity to sexually harass female students).  The Complaint alleges no facts that Emerson knew Respondent posed a risk to Plaintiff, or to anyone else, before she reported the sexual assault in March 2013.

In the absence of a factual predicate on which to base a finding of deliberate indifference, Plaintiff's Title IX claim must be dismissed.  *See, e.g., Pike Sch., Inc.*, 2014 WL 413207 at *3 (dismissing Title IX claim because complaint failed to satisfy deliberate indifference standard); *Town of Bourne*, 2004 WL 1212075, *13 (same).

### 2.   Plaintiff Is Not Entitled To Relief Under Title IX Based On Allegedly Inadequate Policies and Procedures.

Lacking evidence of deliberate indifference, Plaintiff tries to fashion a Title IX claim based on what she perceives as deficiencies in Emerson's policies and procedures for responding to reported sexual assaults.  *See* Compl. ¶¶ 67, 69, 71, 79-86.  Plaintiff alleges that Emerson's policies and procedures are inconsistent with the Title IX guidance promulgated by the United

States Department of Education. *Id.* ¶ 81. As a matter of law, such allegations are not sufficient to state a claim under Title IX.

The United States Supreme Court has held that an alleged failure to comply with Title IX regulations or guidance promulgated by the United States Department of Education does <u>not</u> confer a private right of action. *See Gebser*, 524 U.S. at 291-92 ("[a]gencies generally have authority to promulgate and enforce requirements that effectuate the statute's non-discrimination mandate," but the "implied right of action under Title IX" does not provide for the "recovery in damages for violation of those sorts of administrative requirements") (internal citations omitted). The United States Department of Education's position is consistent with the holding in *Gebser* and Defendants' position: agency guidance is <u>not</u> relevant to a private right of action. *See* U.S. DEPT. OF EDUC., *Questions and Answers on Title IX and Sexual Violence*, 1, n. 9 (Apr. 2014) *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf. The United States Department of Education's guidance expressly confirms that to establish a Title IX claim in private lawsuits, a plaintiff must establish "actual knowledge and deliberate indifference." *Id.* (citing *Davis*, 526 U.S. at 643).

Thus, Plaintiff has no private claim under Title IX on the grounds that Emerson violated Title IX's administrative requirements. *See Gebser*, 524 U.S. at 291-92; *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 757-59 (E.D. Tenn. 2009) (granting motion to dismiss because plaintiff's contention that university's sexual assault policies and procedures violated Title IX did not satisfy the deliberate indifference standard). Try as she might, Plaintiff cannot circumvent the essential element of deliberate indifference.

**C.     Plaintiff Has No Private Right of Action Under the Clery Act.**

Count II of the Complaint must be dismissed because there is no private right of action

under the Clery Act.[5]  The Clery Act expressly prohibits any construction of the statute that

would establish a private civil claim against a college or its employees:

> Nothing in this subsection may be construed to —
> (i) create a cause of action against any institution of higher
> education or any employee of such an institution for any civil
> liability; or
> (ii) establish any standard of care.

20 U.S.C. § 1092(f)(14)(A).  This limitation applies to each obligation imposed by the Clery

Act.[6]  The section of the statute that discusses an institution's responsibility to include specific

policies in the Annual Security Report reinforces the prohibition on civil claims:

> Nothing in this paragraph shall be construed to confer a private
> right of action upon any person to enforce the provisions of this
> paragraph.

20 U.S.C. § 1092(f)(8)(C).

Federal district courts agree.  *See Murray State Univ.*, 2013 WL 960320 at *3 (dismissing

Clery Act claim on the grounds that "there is no private right of action under that statute) (citing

*Univ. of the South*, 687 F. Supp. 2d at 760; *King v. San Francisco Cmty. Coll. Dist.*, No.

C 10-01979 RS, 2010 WL 3930982, **4-5 (N.D. Cal. Oct. 6, 2010) ("[T]he Act itself does not

provide any private right of action.")).  Accordingly, Plaintiff's Clery Act claim must be

dismissed.

---

[5] The United States Department of Education is solely responsible for enforcement of the Clery Act.  *See* 20 U.S.C. § 1092(f)(13) ("the Secretary shall impose a civil penalty upon the institution").
[6] The Clery Act does not require educational institutions to adopt "particular policies, procedures, or practices" with regard to "campus crimes or campus security."  *See* 20 U.S.C. § 1092(f)(2).

**D.     Plaintiff Does Not Allege Facts Sufficient To Support Her Negligence Claims Against Any Defendant.**

To state a negligence claim, Plaintiff must plead facts establishing that: (1) each defendant owed her a legal duty; (2) breach of that duty; and that (3) the breach proximately caused her injury. *See Davis v. Westwood Group*, 420 Mass. 739, 742-43 (1995). Her Complaint lacks these essential elements.

**1.     Plaintiff Has Not Alleged Any Special Circumstances That Impose Legal Liability on Emerson for the Criminal Acts of a Third Party.**

Absent unusual circumstances, there is no duty for a school to protect others from the criminal or wrongful acts of third persons. *See Kavanagh v. Trustees of Boston Univ.*, 440 Mass. 195, 201, 203-04 (2003); *Mullins v. Pine Manor College*, 389 Mass. 47, 54-55 (1983); Restatement (Second) of Torts § 314 (1965). The Complaint describes no unusual circumstances which would give rise to a legal duty. Two students agreed to meet in one student's room and engaged in consensual sexual intercourse, followed by non-consensual intercourse. The Complaint contains no facts to suggest that before Plaintiff reported her sexual assault, Emerson knew, or should have known, that the Respondent posed any risk of sexual assault to her or others. Absent such facts, there is no basis to impose a legal duty. *See Kavanagh,* 440 Mass. at 203-04 (negligence claim must include "specific information . . . suggesting a propensity" for harm).

To support the existence of a legal duty, Plaintiff alleges that Emerson failed to take reasonable precautions and enforce its own policies, but these allegations do not establish a legal duty. The Complaint does not identify any reasonable precautions that Emerson failed to take. The Complaint states vaguely that "Emerson's publications acknowledge that sexual assaults at colleges are foreseeable circumstances and that a student may be unable to consent to sexual conduct due to coercion or voluntary or involuntary alcohol or drug use." Compl. ¶¶ 93-94.

The Complaint fails to identify, quote from, or attach as exhibits any such publications. Accordingly, there is no factual support for this allegation as the law requires. *See Iqbal*, 556 U.S. at 678.  Moreover, even if there were such publications, they do not create the kind of unusual circumstances which may give rise to an exception to the general rule that there is no duty for a school to protect others from criminal or wrongful acts of third parties.  There is no duty to supervise adult students in their dorm rooms or prevent them from drinking alcohol.  *See, e.g., Bash v. Clark Univ.*, No. 06745A, 2006 WL 4114296, *5 (Mass. Super. Nov. 20, 2006) (Agnes, J.) (declining to ground a duty to protect students from overdose on university policy against drug use because it is unreasonable as a matter of law to require university to exercise the kind of vigilance that would be necessary to prevent students from using drugs or alcohol).  As a general matter, "a university cannot prevent these incidents from occurring 'except *possibly* by posting guards in each dorm on a 24-hour, 365-day per year basis . . . . This is not the type of burden one may expect a party or a social institution such as a university to assume as the basis of a special relationship." *Id.*

### 2. Plaintiff Has Not Pled Facts Sufficient to Establish That Any of the Individual Defendants Breached a Duty Owed to Her.

Plaintiff's unsupported, conclusory allegation that the individual Defendants "breached their duty to [Emerson's] students, including [Plaintiff]" is not enough to state a *prima facie* claim of negligence.  Compl. ¶ 98.  Plaintiff alleges that the individual Defendants, as administrators, owed a "duty to implement and enforce the school's published guidelines, codes, regulations, and policies designed to protect [Emerson's] students." *Id.* ¶ 92.  As a threshold matter, Massachusetts law does not impose a duty on administrators to ensure that College policies are never violated.  *See Bash*, 2006 WL 4114296, at *5 (dismissing negligence claim on the grounds that university's policy against unlawful drug use did not create a duty on the part of

individual administrators to prevent student from using drugs).  Recognizing a duty to prevent a sexual assault under these circumstances, where there are no facts to suggest that Emerson or any Defendant was on notice that the Respondent posed a foreseeable risk, would impose on university administrators "an unreasonable burden that would be at odds with contemporary social values and customs." *Id.* at *4 (citing *Kavanagh*, 440 Mass. at 201).

Further, even if a duty could be imposed, the Complaint lacks facts establishing a breach of duty by any of the individual Defendants.  The Complaint includes just one paragraph referring to President Pelton and Director Haden, and two paragraphs that refer to Dean Ludman. In the first instance, Plaintiff alleges that she e-mailed President Pelton, Dean Ludman, and Director Haden to inform them she was sexually assaulted, and they responded.  Compl. ¶ 28. Plaintiff does not allege that their responses violated any legal obligation owed to her.  In the second instance, Plaintiff states that Dean Ludman responded to her appeal and notified her that the College did not need to conduct another Title IX investigation to review the appeal.  *Id.* ¶ 52. Again, the Complaint does not explain how Dean Ludman's response violated any legal duty. Similarly, the allegations concerning Director Arno lack any specification of what legal duty he allegedly breached and how.  *See Id.* ¶¶ 28-29, 45, 49, 55.

Lacking specific factual allegations of how the individual Defendants breached a legal duty owed to her, Plaintiff's negligence claims fail as a matter of law.

### E.     The Complaint Fails to State a *Prima Facie* Claim of Negligent Infliction of Emotional Distress.

To state a claim for negligent infliction of emotional distress, Plaintiff must demonstrate: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomology; and (5) that a reasonable person would have suffered emotional distress under the circumstances.  *Payton v. Abbott Labs*, 386 Mass. 540, 556-57 (1982).

1. **Absent Allegations of Negligent Conduct, Plaintiff's Derivative Negligent Infliction of Emotional Distress Claim Fails As a Matter of Law.**

Plaintiff's negligent infliction of emotional distress claim is wholly derivative of her negligence claim. She alleges no other basis of negligence as the source of her emotional distress. As a result, because the Complaint lacks facts showing that the Defendants acted negligently, Plaintiff's negligent infliction of emotional distress claim fails as a matter of law. *See Urman v. South Boston Savings Bank*, 424 Mass. 165, 171 (1997) (*prima facie* negligent infliction claim requires facts establishing that the defendant owed the plaintiff a duty that was breached).

2. **The Complaint Fails to Plead Physical Harm Manifested by Objective Symptomatology.**

Even if the allegations are sufficient to establish that a duty existed and that a Defendant acted negligently, Plaintiff's failure to plead physical harm manifested by objective symptomatology is fatal to her claim. *See Payton,* 386 Mass. at 555-56. Plaintiff alleges "emotional stress," and "persistent" and "conscious" "pain and suffering" (Compl. ¶¶ 108, 110-112), but emotional pain, without more, is insufficient to satisfy the *prima facie* burden, and, therefore, the claim must be dismissed. *See Shin v. Massachusetts Inst. of Tech.*, No. 020403, 2005 WL 1869101, *10 (Mass. Super June 27, 2005) (citing *Sullivan v. Boston Gas Co.*, 414 Mass. 129, 137 (1993)) (granting motion to dismiss negligent infliction of emotional distress claim on the grounds that sadness and emotional distress were not sufficient evidence of physical harm).

F. **Lacking A Description of Any Extreme, Outrageous, or Intentional Misconduct by the Defendants, the Complaint Fails to Establish a *Prima Facie* Claim of Intentional Infliction of Emotional Distress.**

To state a claim for intentional infliction of emotional distress, Plaintiff must plead facts establishing that: (1) each defendant intended to inflict emotional distress; (2) each defendant's

conduct was extreme and outrageous, (3) their actions caused the plaintiff's distress; and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it. *See Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997) (quoting *Payton v. Abbott Labs*, 386 Mass. at 555). Plaintiff's formulaic recitation of the elements of this claim, without more, is insufficient to survive a motion to dismiss. *See Morales v. Desmarais*, 2013 WL 3208610 at *1.

Whether the facts, as alleged, satisfy the requirement that Emerson's conduct was "extreme and outrageous" is a question of law for the Court. *See Polay v. McMahon*, 468 Mass. 379, 386 (2014) (internal citation omitted). Massachusetts law sets a "very high" threshold for establishing extreme and outrageous conduct. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) ("The standard for making a claim of intentional infliction of emotional distress is very high . . . ."). Conduct qualifies as extreme and outrageous only if it "go[es] beyond all possible bounds of decency and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Roman v. Trustees of Tufts College,* 461 Mass. 707, 718 (2012) (quoting *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987)). Nowhere in the Complaint does Plaintiff allege conduct by any Defendant that could reasonably be viewed as beyond all bounds of decency. The Complaint establishes that Plaintiff reported a sexual assault and the College responded promptly and decisively. Even if Plaintiff could somehow prove that the College's response was inadequate, inadequacy alone does not equate to "atrocious" or "utterly intolerable" conduct. Consequently, the claim must be dismissed. *Town of Bourne*, 2004 WL 1212075, at *13 (dismissing plaintiff's intentional infliction of emotional distress claim where facts show that school promptly responded to report rape once it received notice from the student).

Moreover, Plaintiff alleges no facts to support the required element that a Defendant acted *intentionally* to inflict emotional distress on Plaintiff.  Rather, Plaintiff alleges that the individual Defendants failed to respond adequately.  Such allegations provide no basis from which to infer intentional conduct.

## CONCLUSION

For these reasons, the Defendants respectfully requests that the Court dismiss the Complaint in its entirety.

Respectfully submitted,

DEFENDANTS EMERSON COLLEGE, LEE PELTON, INDIVIDUALLY AND AS PRESIDENT OF EMERSON COLLEGE, RONALD LUDMAN, INDIVIDUALLY AND AS DEAN OF EMERSON COLLEGE, DAVID HADEN, INDIVIDUALLY AND AS DIRECTOR OF HOUSING AND RESIDENCE LIFE, and MICHAEL ARNO, INDIVIDUALLY AND AS TITLE IX INVESTIGATOR

By their attorneys,

/s/ *Harold W. Potter, Jr.*
Harold W. Potter, Jr. (BBO #404240)
Paul G. Lannon, Jr. (BBO#563404)
Katrina N. Chapman (BBO #676177)
Holland & Knight LLP
10 St. James Avenue
Boston, MA  02116-3889
Phone:  (617) 523-2700
Fax:  (617) 523-6850
harold.potter@hklaw.com
paul.lannon@hklaw.com
katrina.chapman@hklaw.com

Dated:  September 29, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to the attorney of record for each party indicated as non-registered participants on this 29th day of September, 2014.

*/s/ Harold W. Potter, Jr.*